**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **SCALE REPRODUCTIONS, LLC,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )   **CIVIL ACTION NO. 07-191-CG-B** |
| | ) |
| **RANDY SKINNER, individually and** | ) |
| **d/b/a MARITIME MODELS BY** | ) |
| **SKINNER; CLASSIC WATERSPORTS,** | ) |
| **INC., f/k/a SCALE REPRODUCTIONS,** | ) |
| **INC., solely and d/b/a MARITIME** | ) |
| **MODELS BY SKINNER; and** | ) |
| **WILLIAM BREWER;** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**ORDER**

This matter is before the court on plaintiff's motion for a preliminary injunction,

defendants' objection thereto, plaintiff's reply and the parties' post hearing briefs.  (Docs. 2, 8,

17, 20 & 21).  A hearing was held and testimony was taken on April 13, 2007.  Upon

consideration of the evidence presented at the hearing, as well as the parties' submissions, the

court concludes that the plaintiff's motion for a preliminary injunction is due to be **DENIED**.

**A.      BACKGROUND**[1]

Defendant, Randy Skinner, is a high school graduate and attended one half year of

college.  (Doc. 8 at 3).  Around 1976, Skinner started Classic Watersports, Inc., f/k/a/ Scale

Reproductions, Inc. (hereinafter "CWI"), a scale model business where he built and sold scale

---

[1] Unless otherwise indicated, all facts are taken from the plaintiff's complaint.  (Doc. 1).

1

models of boats, buildings, railroads and similar items to various ship builders, architects, engineering firms and law firms.  (Doc. 8-2, Skinner Aff. at 1-2).  On or about November 7, 2001, Scale Reproductions, LLC, (hereinafter "Scale"), and CWI, entered into a series of agreements all related to the sale of the business (hereinafter "the business") located in Baldwin County, Alabama.

Amongst the documents executed on or about November 7, 2001, are the Agreement for the Purchase and Sale of Assets by and between Scale and CWI (hereinafter "the Purchase Agreement") and an Employment Agreement (hereinafter "the Agreement") by and between Scale and Skinner.  Section 2 of the Agreement specified that the defendant would work for the plaintiff for three years, until the termination date of November 6, 2004.  Upon the termination date, the defendant was to be bound to the terms of a noncompete provision, contained in Section 10, for a span of three years, as well as a nondisclosure clause, outlined in Section 11.  The Agreement stipulated that defendant's employment could be terminated by the plaintiff, with or without cause, prior to November 2004, the termination date. Under the Agreement, termination without cause would require plaintiff to "treat[] [defendant] as an employee for purposes of receiving compensation and other benefits [] until the Termination Date."  The Agreement fails to articulate how termination with cause would affect the termination date and noncompete period.  Likewise, the Agreement is devoid of any language concerning the possibility that the defendant would quit employment prior to the termination date.  Most importantly, the Agreement neglects to address what affect defendant quitting would have on the termination date and the span of the noncompete period.

Plaintiff currently operates its business in Fairhope, Alabama.  The purpose of the

2

business is to create scale models, replicas, mock-ups and prototypes of all types, including, without limitation, scale models of ships, planes, yachts, buildings and architecture.  Following the November 7, 2001, sale, Skinner worked for plaintiff until he quit in June 2003.  Skinner testified that he worked as a commercial shrimper from June 2003 until December 2006, but that he could not make a living pursuing such work.  Skinner received no compensation from plaintiff after June 2003.  In December 2006, Skinner returned to the model making business.  In January 2007, Skinner hired William Brewer, plaintiff's former employee.

Plaintiff asserts that it recently learned that Skinner opened a business in December 2006, Maritime Models, in the same town and near the same location as plaintiff's business.  Plaintiff submits that Skinner, while employed by plaintiff, had direct contact with plaintiff's customers and clients; access to plaintiff's sales and businesses records; information regarding potential customers; and other confidential and proprietary information, including marketing concepts and strategy plans for the growth of plaintiff's business.  Plaintiff alleges that the noncompete and nondisclosure provisions of the Agreement were in effect through November 6, 2007, despite Skinner's term of employment ending in June 2003, and that Skinner's involvement as owner or employee of Maritime Models  is in violation of these provisions.  Plaintiff's complaint enumerates a variety of state law claims against Skinner, CWI and Brewer.

**B.   LEGAL STANDARD**

The decision to grant or deny a preliminary injunction is a matter within the discretion of the district court and is reviewable only for abuse of discretion.  Baker v. Buckeye Cellulose Corp., 856 F.2d 167, 169 (11th Cir. 1988).  A district court may issue a preliminary injunction where the moving party demonstrates (1) a substantial likelihood of success on the merits; (2)

that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to

the movant outweighs whatever damage the proposed injunction may cause the opposing party;

and (4) if issued, the injunction would not be adverse to the public interest.  Nnadi v. Richter,

976 F.2d 682, 690 (11th Cir. 1992); Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000).

"[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the

movant clearly established the 'burden of persuasion'" as to each of the four prerequisites.

McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (internal citations and

quotations omitted); see also Texas v. Seatrain Int'l, S.A., 518 F.2d 175, 179 (5th Cir. 1975)

(grant of preliminary injunction "is the exception rather than the rule," and movant must clearly

carry the burden of persuasion).[2]

## C.   ANALYSIS

A preliminary injunction is an extraordinary remedy, available when a legal right

has been infringed for which there is no adequate legal remedy and which will result in

irreparable injury if the injunction is not granted.  Alabama v. U.S. Army Corps of Eng'rs, 424

F.3d 1117, 1127 (11th Cir. 2005).  Plaintiff must show that it satisfies each of the four

requirements enumerated supra at Part II before a court may issue a preliminary injunction.  The

court addresses each element in turn.

The first element to be considered is whether plaintiff has demonstrated a substantial

likelihood that it will prevail on the merits of its claims.  As a threshold matter, the plaintiff must

establish that the noncompete and nondisclosure provisions of the Agreement extended through

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), this court
adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior
to the close of business on September 30, 1981.

December 2006, when Skinner returned to the model making business.  Plaintiff proffers only a

conclusory assertion that the Agreement is "not ambiguous," and that, despite the absence of any

language addressing the consequences of a voluntary quit, "the . . . Agreement [] bound Skinner

to not compete with [plaintiff] for three years from the defined Termination Date, or from

November 7, 2004 until November 6, 2007," unless "sooner termination as hereinafter

provided."  (Id. at 2).  Skinner does not dispute voluntarily quitting employment with plaintiff in

June 2003, but contends that the "Agreement was completely silent regarding what happened to

compensation if [he] quit."  (Doc. 21 at 5).  Consequently, Skinner asserts, because plaintiff did

not pay consideration "from and after June[] 2003 . . . [the] non-compete had to commence, as a

matter of law, in June[] 2003."  (Id. at 7).

  The issue, therefore, is whether the noncompete and nondisclosure provisions of

Agreement between plaintiff and Skinner were ambiguous.

> The determination of whether a contract is ambiguous is a question of law for the
> court, the burden being upon the party claiming that ambiguity exists to show the
> necessary indefiniteness of meaning. In determining whether a contract is
> ambiguous, the court begins with its plain language, construed in harmony with
> the plain and generally accepted meaning of the words used, with reference to all
> of the agreement's provisions.

Blue Cross Blue Shield v. Rigas, 923 So. 2d 1077, 1085 (Ala. 2005).  The Alabama Supreme

Court has opined that "[a] contractual provision is ambiguous if it is reasonably susceptible of

more than one meaning."  FabArc Steel Supply, Inc. v. Composite Constr. Sys., 914 So. 2d 344,

357 (Ala. 2005).  "[I]f the court determines that the terms are ambiguous . . ., then the court must

use established rules of contract construction to resolve the ambiguity."  Homes of Legend, Inc.

v. McCollough, 776 So. 2d 741, 746 (Ala. 2000)(citation omitted).  Where the "rules of contract

construction fail to resolve the ambiguity, then, under the rule of contra proferentum, any

ambiguity must be construed against the drafter of the contract."  Id. (citation omitted).

Here, Skinner claims that "he thought his non-compete terminated in June[] 2006, (three years after he quit)."  (Doc. 21 at 6).  In contrast, defendant maintains the three-year noncompete and nondisclosure provisions began to run on November 7, 2004, regardless of Skinner's actions. (Doc. 20 at 2).  There is no language to suggest that plaintiff, as the drafter of the Agreement, considered how a voluntary quit would impact the term of the noncompete and nondisclosure period.  As such, the subject provisions of the Agreement are not so clear as to foreclose the possibility that they are "reasonably susceptible of more than one meaning."  FabArc Steel, 914 So.2d at 357.

Based on the evidence and arguments presented, the court finds that the plaintiff has failed to meet his burden that it is likely to succeed in demonstrating that the noncompete and nondisclosure provisions of the Agreement extended through December 2006.[3]  Because the

---

[3] Plaintiff argues that the noncompete and nondisclosure provisions should run from June 2003 through November 2007.  The court notes that Alabama courts have consistently enforced one-year and two-year noncompete agreements against former employees.  See, e.g., Parker v. Ebsco Indus., 209 So.2d 383 (Ala. 1968)(one-year agreement not to compete in entire continental United States east of Rocky Mountains enforced); Digitel Corp. v. DeltaCom, Inc., 953 F.Supp. 1486 (M.D. Ala. 1996)(two-year restriction prohibiting a former regional manager and a former sales executive of a telephone equipment sales and long distance company from soliciting former or prospective customers of the employer with whom the employees had contact was reasonable); James S. Kemper & Co. Southeast, Inc. v. Cox & Assoc.'s, Inc., 434 So.2d 1380 (Ala. 1983)(two-year noncompete applying to entire State of Alabama enforced); Cent. Bank of the South v. Beasley, 439 So.2d 70 (Ala. 1983)(two years in Baldwin County, Alabama enforced); Tyler v. Eufaula Tribune Publ'g Co., 500 So.2d 1005 (Ala. 1986)(agreement not to compete within fifty mile radius for two years enforced).  Though the Alabama Supreme Court has also found three years to be a reasonable time period in the context of a nonsolicitation agreement, see, e.g., Ex parte Caribe, 702 So.2d 1234 (Ala. 1997)(five-year nonsolicitation provision reduced to three years), there are few, if any, cases in which Alabama courts have upheld a three-year noncompete in the context of an employment agreement.  Plaintiff cites Benchmark Med. Holdings, Inc. v. Barnes, 328 F.Supp.2d 1236 (M.D. Ala. 2004), for the proposition that Alabama courts have upheld noncompete agreements of three years and longer.

plaintiff cannot establish the first prerequisite for injunctive relief, the court ceases to proceed

with the remainder of the preliminary injunction analysis. Accordingly, plaintiff's motion for a

preliminary injunction is due to fail.

## **CONCLUSION**

After due consideration of all matters presented and for the reasons set forth herein, the

court finds that plaintiff's motion for preliminary injunction is due to be **DENIED**

**DONE** and **ORDERED** this 19th day of October, 2007.

/s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE

---

(Doc. 20 at 4).  In <u>Benchmark</u>, however, the court upheld a five-year restrictive covenant in a business sale agreement and a two-year noncompete in an employment agreement, which ended one year prior to the restrictive covenant in the business sale agreement ended. 328 F.Supp.2d at 1266.  The issue before this court is the span of the noncompete and nondisclosure provisions in the context of the Employment Agreement between plaintiff and Skinner.  Thus, plaintiff's reliance on <u>Benchmark</u> is misplaced.